**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:                                          :          Chapter 7

Forever Green Athletic Fields, Inc.,            :

           Debtor.                              :          Bankruptcy No.  12-13888-MDC

# MEMORANDUM

## INTRODUCTION

This Court held a hearing on February 23, 2016 (the "Hearing"), to address the Motion for a

Third Award of Attorneys' Fees and Costs dated January 18, 2016 [Docket No. 146] (the "Motion"), filed

by Forever Green Athletic Fields, Inc. ("Forever Green").  In the Motion, Forever Green requests this

Court assess Charles C. Dawson ("Mr. Dawson"), Kelli L. Dawson ("Mrs. Dawson," collectively with

Mr. Dawson, the "Dawsons") and Cohen Seglias Pallas Greenhall & Furman, P.C. ("Cohen Seglias,"

collectively with the Dawsons, the "Petitioning Creditors") with a third fee award to reimburse Forever

Green for its attorneys' fees and costs incurred as a result of the Petitioning Creditors' filing of a Chapter

7 Involuntary Petition dated April 20, 2012 (the "Involuntary Petition").  Specifically, Forever Green

seeks an award in the total amount of $93,136.83 consisting of attorneys' fees in the amount of

$91,269.00 and costs in the amount of $1,867.83.  This amount is in addition to two prior §303(i) awards

in the total amount of $124,281.91 (the "Prior Fee Awards") previously granted by this Court to Forever

Green and assessed, joint and severally, against the Petitioning Creditors.

Prior to the Hearing, Cohen Seglias filed an Objection dated February 11, 2016 [Docket No. 148]

(the "Objection").  Despite receiving adequate notice of the Motion and the scheduled date of the

Hearing, the Dawsons did not file a response to the Motion or otherwise appear at the Hearing.  After

hearing the arguments of Forever Green and Cohen Seglias, this Court requested from Forever Green

additional information categorizing the services provided by its various attorneys.[1]  Having received this information and the parties' post-hearing papers, this Court finds that Cohen Seglias has overcome the presumption of its liability for an award attorneys' fees under §303(i).  For the reasons elaborated herein, this Court will exercise its discretion and enter a judgment in favor of Forever Green and against Mr. Dawson, only, in the total amount of $72,585.60.

## PROCEDURAL HISTORY

The history of this case has been well documented.[2]  This case was initiated on April 20, 2012, by the filing of the Involuntary Petition by the Petitioning Creditors and dismissed by this Court on November 1, 2013.  Since then, this case traveled from this Court to the Third Circuit interspersed with a brief visit to the Philadelphia Court of Common Pleas.  Much of this history addressed the attempts by the Petitioning Creditors to challenge the merits of this Court's rationale for refusing the Petitioning Creditors' attempt to invoke this Court's jurisdiction.  With the issuance of its Opinion dated October 16, 2015, the Third Circuit affirmed the merits of this Court's dismissal of the Involuntary Petition.

On January 28, 2016, Forever Green filed the Motion to seek reimbursement of its fees and costs incurred during the period of October 1, 2014 through December 31, 2015.  Thereafter, Forever Green filed an addendum to the Motion characterized as a "Supplemental Fees and Costs of Maschmeyer Karalis P.C. for the period from January 1, 2016 through January 31, 2016, in Further Support of the Motion" [Docket No. 149] (the "Supplemental Request").  Collectively, the Motion and the Supplemental Request seek reimbursement of Forever Green's fees and cost incurred in connection with four categories of service.  As characterized by the parties in a Joint Stipulation of Facts dated February 29, 2016 [Docket No. 153] (the "Joint Stipulation"), the four categories of service are: (1) the appellate proceedings held by the Third Circuit that addressed the merits of this Court's dismissal of the Involuntary Petition; (2) the §303(i) proceedings held by this Court wherein Forever Green has sought reimbursement from the

---

[1] Forever Green is represented by two firms: (1) Maschmeyer Karalis P.C.; and (2) Helmer, Conley & Kasselman, P.A.

[2] *See, e.g., In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015); *Forever Green Athletic Fields, Inc. v. Dawson*, 514 B.R. 768 (E.D. Pa. 2014); *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413 (Bankr. E.D. Pa. 2013).

Petitioning Creditors of Forever Green's fees and costs; (3) the offset proceedings held by the

Philadelphia Court of Common Pleas and, after removal, by this Court wherein Cohen Seglias sought to

offset from its §303(i) liability the amount of Forever Green's pre-petition indebtedness; and (4) Forever

Green's collection efforts wherein Forever Green sought to collect the amount of this Court's prior

§303(i) awards from the Petitioning Creditors.  To provide the necessary additional context for this

Court's decision, this Court will elaborate upon the history of each of these four categories of service.

**Appellate Proceedings**

Pursuant to the Motion, Forever Green seeks a §303(i) award to reimburse it for its fees and costs

incurred in connection with appellate proceedings litigated before the Third Circuit.  The Motion seeks

reimbursement of the entirety of Forever Green's fees and costs incurred in connection with matters

addressed by the Third Circuit.  The Supplemental Request does not include fees incurred in connection

with the appeal.  In total, Forever Green seeks reimbursement of $39,378.50 in fees and $994.45 in costs

incurred in connection with the appellate proceedings.

By way of background, this Court entered an Order dated November 1, 2013 [Docket No. 65]

(the "Dismissal Order"), dismissing the Involuntary Petition filed by the Dawsons and Cohen Seglias

(collectively, the "Petitioning Creditors").  As elaborated by this Court's Memorandum dated November

1, 2013 [Docket No. 64] (the "Dismissal Memorandum"), issued in support of the Dismissal Order, this

Court determined that Mr. Dawson had invoked this Court's jurisdiction for an improper purpose.  On

this basis, this Court dismissed the Involuntary Petition as a bad faith filing.  At the time this Court

dismissed the Involuntary Petition, this Court scheduled for December 6, 2013, a hearing for its

consideration of whether Forever Green was entitled to a §303(i) award (the "§303(i) Hearing").

The Petitioning Creditors filed a Notice of Appeal dated September 12, 2013, seeking review by

the District Court of the merits of this Court's decision.  After receiving the parties' briefs, the District

Court sustained this Court's decision and issued a Memorandum dated August 13, 2014 (the "District

Court Memorandum"),[3] explaining its decision.  Shortly thereafter, the Dawsons filed a Notice of Appeal dated September 12, 2014, seeking review by the Third Circuit.  Of significance, Cohen Seglias was not identified as a party to the Dawsons' appeal.[4]  Ultimately, the Third Circuit issued an Opinion dated October 16, 2015, affirming this Court's Dismissal Order. [5]  Thereafter, the record was returned to this Bankruptcy Court.

**The §303(i) Proceedings**

Pursuant to the present Motion and the Supplemental Request, Forever Green also seeks reimbursement of its fees and costs relating to its present request for a §303(i) award that Forever Green has incurred for the period running from the entry of the Prior Fee Awards through the end of January 2016.  In total, Forever Green seeks reimbursement of $19,332.00 in fees and $621.33 in costs incurred in furtherance of its presentation, pursuant to the Motion and the Supplemental Request, of its present request for a third §303(i) award.  These amounts do not relate to the prior §303(i) proceedings held by this Court that began immediately after this Court's dismissal of the Involuntary Petition.

The history of the §303(i) proceedings began with this Court's dismissal of the Involuntary Petition.  Consistent with the instructions issued by this Court in the Dismissal Order, the parties were originally scheduled to participate in the §303(i) Hearing on December 6, 2013.  In addition, this Court instructed the parties that they may file memoranda addressing whether Forever Green was entitled to a §303(i) award.[6]  On December 2, 2013, Forever Green filed its memorandum in support of its request for a §303(i) award as well as two declarations containing an accounting of its fees and costs incurred.  For whatever reason, the Petitioning Creditors did not file any brief addressing merits of Forever Green's request.  However, the Petitioning Creditors filed an Expedited Motion dated December 3, 2013 [Docket No. 75], requesting this Court stay its consideration of Forever Green's request for a §303(i) award.  At

---

[3] *Forever Green Athletic Fields, Inc. v. Dawson, et al.*, 514 B.R. 768 (E.D. Pa. 2014).

[4] *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 332 (3d Cir. 2015) ("The Dawsons (without Cohen Seglias) filed this appeal.").

[5] *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015).

[6] Dismissal Order, ¶4.

the hearing scheduled for December 6, 2013, this Court addressed the Petitioning Creditors' request to stay the §303(i) proceedings.[7]

At the December 6 hearing, this Court concluded that the issues implicated by the Petitioning Creditors' appeal did not preclude this Court's consideration of whether the putative Debtor was entitled to a §303(i) award.  Transcript of December 6, 2013 Hearing ("Transcript December 6, 2013"), 9:8-19.[8] Despite finding that it retained jurisdiction to consider the merits of Forever Green's request for §303(i) damages, this Court decided it would issue a stay of the §303(i) proceedings conditioned upon the posting of a bond by the Petitioning Creditors in the amount of $1,000,000 on or before December 20, 2013.  In the event that the Petitioning Creditors failed to post this bond, this Court continued the §303(i) Hearing to January 13, 2014.

The Petitioning Creditors failed to post the bond.  The Petitioning Creditors again declined to file any brief addressing the merits of Forever Green's request for an initial §303(i) award.  Rather, on the eve of the scheduled January 13 hearing,[9] the Petitioning Creditors once again attempted to block the continuing of the §303(i) proceedings.  In their Motion dated January 13, 2014 [Docket No. 99], the Petitioning Creditors sought to relitigate the issues considered by this Court at the December 6 hearing and provided no explanation of why this Court should alter its conclusion that a stay was warranted only upon the posting of an appeal bond.  For the reasons stated at the January 13 hearing,[10] this Court denied the Petitioning Creditors' request to stay the §303(i) proceedings.  Thereafter, this Court resumed its

---

[7] At this hearing, three attorneys appeared on behalf of Forever Green.  Whereas, the Petitioning Creditors were represented collectively by one attorney.

[8] *In re Ponton*, 446 Fed. Appx. 427, 429 (3d Cir. 2011) ("When a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal."); *In re TPG Troy, LLC*, Bky. No. 12-14965, 2013 WL 3789344, *3, n.5 (Bankr. S.D.N.Y. Jul. 18, 2013) ("section 303(i) case law is clear that an appeal of an involuntary case dismissal does not divest the bankruptcy court of jurisdiction to rule on attorney's fees, costs and damages under section 303(i)."); *In re VII Holdings Co.*, 362 B.R. 663, 666, n.3 (Bankr. D. Del. 2007) ("appeal does not divest this Court of its jurisdiction to determine whether the Non–Petitioning Creditors are entitled to attorneys' fees and costs"); *In re Tobacco Road Associates, LP*, Civ. No. 06-2637, 2007 WL 966507, *21 (E.D. Pa. Mar. 30, 2007) (finding that a bankruptcy court retains jurisdiction to consider the imposition of a §303(i) award during the pendency of an appeal of the dismissal of an involuntary petition).

[9] The request was filed at 12:14 a.m. on the day of the January 13 hearing.

[10] Transcript of January 13, 2014 Hearing ("Transcript January 13, 2014"), 9:110:15.

consideration of Forever Green's request for an initial §303(i) award.

At the January 13 hearing, three attorneys from two firms appeared on Forever Green's behalf.[11] In support of its request for a §303(i) award, Forever Green presented evidence to establish the amount of its fees and costs as well as the reasonableness of what was incurred.  In response, Petitioning Creditors' counsel appeared and argued that, as a matter of law, Forever Green was only entitled to reimbursement of attorneys' fees and costs incurred on or before November 1, 2013, the date this Court dismissed the Involuntary Petition.[12]  Petitioning Creditors' counsel did not dispute the market rates charged by Forever Green's attorneys or argue that the underlying services were, on the whole,[13] unnecessary or otherwise improper.[14]  Significantly, Petitioning Creditors' counsel raised for the first time the issue of whether the §303(i) award should be assessed against one or all of the Petitioning Creditors.[15]  The issue was addressed in the context of the possible assessment of punitive damages and it was suggested to this Court that such an award should only be issued against Mr. Dawson.[16]  After receiving the parties' evidence and concluding the hearing, this Court took Forever Green's initial §303(i) request under advisement.

While the §303(i) proceedings remained under advisement with this Court, the District Court entered on August 13, 2014, its decision affirming this Court's Dismissal Order.  Shortly thereafter, new counsel filed a Notice of Appearance dated August 26, 2014 [Docket No. 105], on behalf of Cohen Seglias.  Until this date, the Petitioning Creditors had been represented collectively.  With the appearance of new counsel, the strategies of Cohen Seglias and the Dawsons appeared to diverge.  On September 12, 2014, the Dawsons filed their notice of appeal to the Third Circuit.  Whereas, Cohen Seglias filed a Memorandum dated September 24, 2014 [Docket No. 108], arguing, for the first time, that this Court

---

[11] Robert Seitzer and Paul Maschmeyer from the firm of Maschmeyer Karalis and William Tobolsky from the firm of Helmer, Conley & Kasselman, P.A.

[12] Transcript January 13, 2014, 27:20-28:23; 36:8-12; 49:25-50:5.

[13] As this Court previously observed, Petitioning Creditors' counsel argued that some of the services were duplicative.  However, this Court was unable, on the evidence presented by the Petitioning Creditors, to determine that the alleged services were in fact duplicative.  First Fee Order, ¶¶9-12.

[14] Transcript January 13, 2014, 39:16-40:8.

[15] Transcript January 13, 2014, 53:2-54:15; 63:1-67:24.

[16] Transcript January 13, 2014, 63:1-13.

should not assess Cohen Seglias for Forever Green's attorneys' fees and costs.

After determining that Cohen Seglias' filing was untimely and would not be considered by this Court, this Court entered an Order dated October 8, 2014 [Docket No. 109] (the "First Fee Order"), wherein this Court entered a judgment in favor of Forever Green and against the Petitioning Creditors, jointly and severally, in the total amount of $92,050.21 (the "First Fee Award"), consisting of attorneys' fees in the amount of $88,265.00 and costs in the amount of $3,785.21.  The First Fee Award related to attorneys' fees and costs incurred by Forever Green during the period of April 20, 2012 (the "Petition Date") through November 30, 2013, as a result of the Petitioning Creditors filing of the Involuntary Petition.

Less than two weeks after the entry of the First Fee Award, Forever Green filed two motions: (1) a Motion to Reconsider dated October 21, 2014 [Docket No.111];[17] and a Motion for a Second Award of Attorneys' Fees and Costs dated October 21, 2014 [Docket No. 113] (the "Second §303(i) Motion"). Pursuant to the Second §303(i) Motion, Forever Green sought a judgment in favor of Forever Green and against the Petitioning Creditors in the total amount of $21,141.35, consisting of attorneys' fees in the amount of $20,662.00 and costs in the amount of $489.35.  The attorneys' fees and costs sought in the Second §303(i) Motion were incurred by Forever Green during the period running from January 1, 2014 through September 30, 2014.  Roughly contemporaneously, Cohen Seglias filed a Motion to Reconsider dated October 22, 2014 [Docket No. 115] (the "Motion to Reconsider"), wherein Cohen Seglias requested this Court amend the First Fee Award to provide that the First Fee Award should not be assessed against Cohen Seglias.

On November 19, 2014, this Court held a hearing to address the Motion to Reconsider and the Second §303(i) Motion.  At the November 19 hearing, counsel for Forever Green and Cohen Seglias appeared.  For whatever reason, the Dawsons did not appear or otherwise respond to any of the requests

---

[17] In response to this motion, this Court entered an Order dated November 18, 2014 [Docket No. 129], amending the amount of the total amount of the First Fee Award to $104,060.56 consisting of attorneys' fees in the amount of $100,265.00 and costs in the amount of $3,795.56.  Transcript of November 19, 2014 Hearing ("Transcript November 19, 2014"), 35:17-50:16.

then under consideration by this Court.

At the November 19 hearing, counsel for Cohen Seglias argued that it should not be assessed for any portion of the §303(i) award.  Specifically, Cohen Seglias' replacement counsel argued that (1) Cohen Seglias should not be assessed with any §303(i) damages in connection with this Court's consideration of the Second §303(i) Motion because all findings of bad faith were limited to Mr. Dawson; and (2) with regard to the First Fee Award, the record should be reopened to permit Cohen Seglias to present evidence that it should not be assessed with any damages.  In explanation of its position with regard to the First Fee Award, Cohen Seglias represented to this Court that it was presently the position of its prior counsel, that prior counsel did not in fact represent Cohen Seglias during the course of this Court's consideration of the matters resulting in the entry of the First Fee Order.[18]  For the reasons stated at the November 19 hearing, this Court denied Cohen Seglias' Motion to Reconsider.[19]

With regard to the Second §303(i) Motion, this Court once again received from Forever Green evidence with regard to the amount of its fees and costs as well as the reasonableness of what was incurred.  Addressing whether Cohen Seglias should not be assessed with an additional award, this Court found that Cohen Seglias was on notice of its potential liability for a §303(i) award since at least the issuance by this Court of its Dismissal Order.  Yet for almost ten additional months, it did nothing to address the allocation issue until it obtained replacement counsel.  Rather than serve as a basis to excuse its liability, this Court determined that its delay underscored the lack of diligence that this Court had previously determined Cohen Seglias to have exhibited in connection with its participation in the filing of the Involuntary Petition.[20]  For this reason, this Court concluded that Cohen Seglias failed to establish any reason why it should not be held liable for an additional §303(i) award.  For this reason and at the close of

---

[18] Transcript November 19, 2014, 11:6-13:15; 19:1-2; 24:21-23; 51:25-52:15.

[19] Transcript November 19, 2014, 26:12-32:9; *see also Link v. Wabash Railroad Company*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent…").

[20] Transcript November 19, 2014, 28:23-30:8; 57:22-58:19; *see also In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 428 (Bankr. E.D. Pa. 2013) (discussing "the lack of diligence exhibited by the Petitioning Creditors").

the hearing, this Court entered a Judgment Order dated November 19, 2014 [Docket No. 128], wherein this Court entered a judgment in favor of Forever Green and against the Petitioning Creditors, jointly and severally, in the total amount of $20,221.35 (the "Second Fee Award") consisting of attorneys' fees in the amount of $19,782.00 and costs in the amount of $439.35.

Now, Forever Green has filed the present Motion seeking a third §303(i) award.  Its fees and costs incurred in connection with the prosecution of this request are one of the four categories of fees and costs for which Forever Green presently seeks reimbursement.  These amounts do not include any amounts incurred in connection with the Prior Fee Awards.

**The Offset Proceedings**

The third category of fees and costs for which Forever Green seeks reimbursement relates to those fees and costs incurred by Forever Green in defense of Cohen Seglias' attempt to offset from its §303(i) liability established by the Prior Fee Awards the amount of Forever Green's pre-petition indebtedness to Cohen Seglias.  Pursuant to the Motion, Forever Green seeks reimbursement of the entirety of Forever Green's fees and costs incurred in connection with the offset proceedings.  The Supplemental Request does not include fees incurred in connection with the offset proceedings.  In total, Forever Green seeks reimbursement of $17,226.50 in fees and $137.70 in costs incurred in connection with the offset proceedings.

The offset proceedings began shortly after the entry of the Second Fee Award.  On December 15, 2015, Cohen Seglias filed a complaint in the Philadelphia Court of Common Pleas initiating a declaratory judgment action (the "State Court Action").  Cohen Seglias sought a declaratory judgment that it may set-off (1) $206,126.00, the amount of a pre-petition state court default judgment it obtained in the Philadelphia Court of Common Pleas against Forever Green, from (2) $124,281.91, the amounts of Cohen Seglias's accrued §303(i) liability.  In response, the Defendants filed a Notice of Removal dated December 24, 2014 (the "Notice of Removal"), removing the State Court Action to this Court.  After this

Court denied a motion for remand filed by Cohen Seglias,[21] this Court was charged with adjudicating the

Motion for Summary Judgment dated January 26, 2015 [Adv. No. 14-692, Docket No. 8], filed by

Forever Green.

In support of their position that Cohen Seglias was not entitled to offset from its §303(i) liability

the amount of Forever Green's pre-existing liability to Cohen Seglias, Forever Green made three

arguments.  First, Forever Green argued that Cohen Seglias waived its right to offset by failing to argue to

this Court that it was entitled to offset any potential §303(i) damages.  *See, e.g., Bradford-White Corp. v.*

*Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989) (recognizing that defendant waive statute of

limitations defense by not asserting it prior to trial); *In re Schiliro*, 72 B.R. 147, 149 (Bankr. E.D. Pa.

1987) (holding that petitioning creditor waived right to offset prepetition debt from §303(i) damages by

failing to assert offset until after the conclusion of the §303(i) hearing).  Second, Forever Green argued

that, as a matter of law, Cohen Seglias was not entitled to offset the Default Judgment from the amount of

its §303(i) liability.  *See, e.g., In re Macke Intern. Trade, Inc.*, 370 B.R. 236, 255-56 (9th Cir. BAP 2007)

---

[21] Because the §303(i) awards were issued by this Court, this Court determined that it retained jurisdiction to "aid or effectuate its prior decrees."  *Sansom Committee by Cook v. Lynn*, 735 F.2d 1535, 1549 (3d Cir. 1984); *see also Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) (holding bankruptcy courts have jurisdiction to interpret and enforce their own orders); *In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986) ("bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner.  Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented.").  As stated by the Supreme Court,

> The pleading by which respondent invoked the jurisdiction of the bankruptcy court in the present case is in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court. That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled

*Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934).

Because the interpretation of the §303(i) Orders implicated this Court's core jurisdiction, this Court determined that mandatory abstention was not implicated.  *Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010) (recognizing mandatory abstention was not implicated because the interpretation of bankruptcy court's order was within core jurisdiction); *Stoe v. Flaherty*, 437 F.3d 209, 213 (3d Cir. 2006) (recognizing mandatory abstention is only implicated in "related to" cases); *In re Allegheny Health, Education and Research Foundation*, 383 F.3d 169, 175-76 (3rd Cir. 2004) (holding that "the bankruptcy court correctly determined that the suit was a core proceeding because it required the court interpret and give effect to its previous sale orders").  With regard to permissive abstention, this Court determined it too was not warranted.  Abstention is in this Court's discretion.  However, this action was not premised on state law issues.  To the contrary, the only issue related to the implementation of §303(i), an area within the expertise of this Court.  *In re General Growth Properties, Inc.*, 460 B.R. 592, 603 (Bankr. S.D.N.Y. 2011) (refusing to abstain whether "the crux of the dispute involves bankruptcy issues"); *In re Kewanee Boiler Corp.*, 270 B.R. 912, 923 (Bankr. N.D. Ill. 2002) ("a bankruptcy court with core jurisdiction should narrowly consider the foregoing factors in favor of having the matter heard in bankruptcy court.  Further, a court should generally not abstain from interpreting its own orders except under 'extraordinary circumstances,' because the court that entered a judgment is usually best suited to interpret it.").

("The consensus of courts is that a setoff of this sort is impermissible."); *In re Diloreto*, 388 B.R. 637,

655 (Bankr. E.D. Pa. 2008) (holding that creditor may not setoff from §303(i) liability the amount of the

debtor's prepetition obligation) *aff'd* 442 B.R. 373, 376-77 (E.D. Pa. 2010) ("we agree with Judge Fox

and the Macke court that '[i]f a setoff were allowed, there would be little downside to a creditor's resort

to an involuntary bankruptcy petition against a debtor, even if its conduct did not rise to the level of 'bad

faith,' " and that the allowance of a setoff right would severely weaken the purpose of 303(i).'").  Third

and finally, Forever Green argued that Cohen Seglias was not entitled to an offset from the amount of its

§303(i) liability because of the absence of mutuality of obligations as required by §553.  *See, e.g., In re

LaBrum & Doak, LLP*, 237 B.R. 275, 299 (Bankr. E.D. Pa. 1999) ("The Bankruptcy Code, at 11 U.S.C.

§553, preserves a creditor's right to set off only certain mutual obligations between it and a debtor.").

     After receiving Cohen Seglias' Objection dated February 25, 2015 [Adv. No. 14-692, Docket No.

14], and holding a hearing on March 3, 2015, this Court entered an Order dated May 4, 2015 [Adv. No.

14-692, Docket No. 16], wherein this Court denied Cohen Seglias' request to offset its pre-petition

default judgment against the sum of its §303(i) liability.  As elaborated by this Court at the hearing, this

Court relied on the reasoning espoused by my former colleague, Bankruptcy Judge Bruce I. Fox,

elaborated in his opinion, *In re Diloreto*, 388 B.R. 637 (Bankr. E.D. Pa. 2008).  As recognized in

*Diloreto*, bankruptcy courts generally deny a petitioning creditor's request to set off from its §303(i)

liability the amount of any prepetition debt owed by a former involuntary debtor.  Incorporating the

*Macke* opinion issued by the Ninth Circuit Bankruptcy Appellate Panel, Judge Fox observed "[t]he

consensus of courts is that a setoff of this sort is impermissible." *Id.* at 655 (quoting *In re Macke Int'l

Trade, Inc.*, 370 B.R. 236, 255 (9th Cir. BAP 2007)).  Explaining this result, Judge Fox wrote:

> Involuntary petitions, even ones filed in good faith, can have a significant negative effect
> upon the interests of a putative debtor, including requiring the putative debtor to incur
> significant counsel fees.  Section 303(i) was intended to ameliorate those negative effects
> by imposing liability upon the unsuccessful petitioning creditor, and the allowance of a
> setoff right would severely weaken that statutory provision.

*Id.* at 655.

     After appeal, Judge Fox's reasoning was confirmed by District Court Judge Goldberg who wholly

adopted Judge Fox's reasoning in affirming his opinion regarding the applicability of setoff to §303(i)

awards.  In turn, this Court wholly adopted this reasoning in denying the request from Cohen Seglias to

offset Forever Green's prepetition indebtedness from Cohen Seglias' §303(i) liability.

**Collection Efforts**

Finally, Forever Green seeks reimbursement of its fees and costs incurred in connection with its

efforts to collect the amount of the Prior Fee Awards from the Petitioning Creditors.  Pursuant to the

Motion, Forever Green seeks reimbursement of $15,332.00 in fees and $114.35 in costs incurred in

connection with Forever Green's collection efforts.  The Supplemental Request does not include fees

incurred in connection with the collection of the Prior Fee Awards.

After the entry of the Second Fee Award by this Court, Forever Green retained the firm of

Helmer, Conley & Kasselman, P.A. to assist in the endeavor of collecting the Prior Fee Awards.

Ultimately, not much was required to obtain payment of the Prior Fee Awards.  On or about March 9,

2015, Cohen Seglias voluntarily paid $124,281.91, the total amount of the Prior Fee Awards, to Forever

Green.  Despite receiving full payment a little more than two months after the entry of the Prior Fee

Awards, Forever Green's attorneys managed to expend over 40 attorney hours in furtherance of their

collection efforts.  These services do not include amounts expended in connection with Cohen Seglias'

attempt to offset Forever Green's pre-petition liability from the amount of the Prior Fee Awards.  Rather,

these services were limited to efforts to cause the attachment of the Prior Fee Awards to the assets of the

Petitioning Creditors.

## LEGAL DISCUSSION

### A.    Section 303(i) Generally

As previously recognized by this Court, the dismissal of an involuntary petition typically entitles

an involuntary debtor to an award of attorneys' fees and costs incurred in connection with any

proceedings before the bankruptcy court relating to the dismissal of an involuntary petition.  *See, e.g., In

re Express Car & Truck Rental, Inc.*, 440 B.R. 422, 431 (Bankr. E.D. Pa. 2010).  A §303(i)(1) award may

include fees and costs incurred in connection with subsequent legal proceedings, including both any

appeals of the dismissal of the involuntary petition, *In re Rosenberg*, 779 F.3d 1254, 1265 (11th Cir.

2015) ("nothing in §303(i)(1) precludes appellate fees or limits fees to only those incurred before the date

of the dismissal."), and any proceedings relating to a debtor's entitlement to a §303(i) award.  *Express*

*Car & Truck Rental, Inc.*, 440 B.R. at 436 ("The Former Debtors' entitlement to 'fees on fees' is well

established."); *In re Atlas Mach. And Iron Works, Inc*., 190 B.R. 796, 803 (Bankr. E.D. Va. 1995)

("compensable fees include time expended by Atlas not only in defending the initial filing of the

involuntary petition, but also time expended in defending Bethlehem's appeals of the dismissal of the

petition and preparing its request for fees, costs and damages.").  Whereas, a §303(i)(2) award permits a

debtor to recover actual and punitive damages upon a finding of bad faith.  The recovery of actual

damages[22] is limited to those damages proximately caused by the filing of an involuntary petition.  By

permitting for the reimbursement of a debtor's attorneys' fees in addition to any actual damages caused

by the improper filing of an involuntary petition, §303(i) creates a statutory exception to the usual

"American Rule" wherein litigants are required to pay their own attorneys' fees.  *See, e.g., Alyeska*

*Pipeline Service Co. v. Wilderness Society, et al.*, 421 U.S. 240 (1975).

As evidenced by the text of §303(i), a debtor's entitlement to a §303(i) award is not automatic.  In

relevant part, the statute provides "the court *may* grant judgment…"  11 U.S.C. §303(i) (emphasis added).

From the use of the word "may" rather than the word "shall," this Court must infer that Congress

anticipated that some petitioning creditors would not be obligated to reimburse an involuntary debtor for

its reasonable attorneys' fees and costs. *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346

(2005) (stating "[t]he word 'may' customarily connotes discretion."); *In re Reid*, 854 F.2d 156, 159 (7th

Cir. 1988) ("the plain language of the statute clearly contemplates that fees and costs will not be awarded

in all cases, even though a party will ordinarily incur attorneys' fees in seeking to dismiss the petition.");

---

[22] Frequently, bankruptcy courts characterize the recovery of actual damages contemplated by §303(i)(2)(A) to include
reasonable attorneys' fees and costs that are also recoverable, in the absence of a finding of bad faith, pursuant to §303(i)(1).  *See,
e.g., In re Landmark Distributors, Inc.*, 195 B.R. 837, 847 (Bankr. D.N.J. 1996) (finding attorneys' fees may be awarded under
both §§303(i)(1) and (i)(2)); *In re Ramsden*, 17 B.R. 59, 61 (Bankr. N.D. Ga. 1981) ("Costs and reasonable attorney's fees listed
in s 303(i)(1) are clearly included within the (i)(2)(A) damages proximately caused by the filing…").

*In re Tarasi & Tighe*, 88 B.R. 706, 711 (Bankr. W.D. Pa. 1988) ("An award of relief is discretionary with the Court and the mere fact that the conditions precedent to the allowance of costs and fees permitted by §303(i)(1) are met is enough to warrant the exercise of this Court's discretion in favor of such an award."); *In re Ross*, 135 B.R. 230, 234 (Bankr. E.D. Pa. 1991) ("Clearly, the grant of such an award is discretionary."). Problematically, §303(i) does not provide any guidance as to how a bankruptcy court should exercise its discretion. *See, e.g., Ross, 135 B.R.* at 235 ("Unfortunately, the statute itself provides no framework or list of factors Congress expected courts to consider in the exercise of their discretion.").

In the absence of statutory guidance, the majority of bankruptcy courts have read §303(i) to establish that the dismissal of an involuntary petition creates a rebuttable presumption in favor of an award of *reasonable* attorneys' fees and costs. *Express Car & Truck Rental, Inc.*, 440 B.R. at 431 ("a majority of courts have held that there is a presumption in favor of awarding costs and reasonable attorney's fees under §303(i)(1)."). Within this framework, a former involuntary debtor bears the initial burden of establishing the reasonableness of its attorneys' services. Once the underlying reasonableness of the fees is established, the petitioning creditors bear the burden of establishing that a §303(i) award is otherwise inappropriate. *Diloreto*, 388 B.R. at 648.

To evaluate whether a §303(i) award is appropriate, bankruptcy courts regularly look to the totality of the circumstances. *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 706 (9th Cir. 2004); *In re Beltway Law Group, LLP*, Bky. No. 14-00380, 2015 WL 44562717, *3 (Bankr. D.D.C. Jul. 20, 2015); *Express Car & Truck Rental, Inc.*, 440 B.R. at 432; *Ross*, 135 B.R. at 237. Applying the totality of the circumstances analysis, bankruptcy courts will consider: (1) the petitioners' relative culpability, (2) the petitioner's motives for joining the involuntary petition, (3) the merits of the involuntary petition, (4) the relative reasonableness of the debtor's and petitioners' conduct, and (5) other circumstances this Court may deem relevant to the exercise of its discretion. *Higgins* 379 F.3d at 707-08; *Beltway Law Group, LLP*, 2015 WL 44562717, *3.

In addition to having the discretion to determine whether a §303(i) award is appropriate, bankruptcy courts also retain the discretion to allocate liability for such an award among the petitioning

14

creditors.  While a bankruptcy court may hold petitioning creditors jointly and severally liable, there is no

requirement that a §303(i) award be assessed equally among the petitioning creditors.  It is within a

bankruptcy court's discretion to assess one creditor with the entirety of the §303(i) award and hold the

others harmless.  *In re Maple-Whitworth*, 556 F.3d 742, 746 (9th Cir. 2009); *Ross*, 135 B.R. at 239.

Finally, this Court rejects the notion that its past decisions to grant Forever Green's prior §303(i)

motions are determinative of whether the present Motion should be granted.  In support of the present

Motion, Forever Green argues that the law of the case doctrine mandates this Court grant its present

§303(i) request.  Upon reflection, this Court finds this argument to be without merit.  The adjudication of

the present Motion does not implicate the same issues that were decided by this Court in connection with

its issuance of the Prior Fee Awards.  The Prior Fee Awards are based on separate evidentiary records

relating to separate fees and costs incurred by Forever Green.  The determination that Forever Green's

earlier fees and costs were reasonable was based on other evidence that is not relevant to this Court's

present determination of whether its subsequent fees and costs are reasonable.  As a result, Forever

Green's reliance on the law of the case doctrine is misplaced.  *See, e.g., Hamilton v. Leavy*, 322 F.3d 776,

787 (3d Cir. 2003) ("when the record contains new evidence, the question has not really been decided

earlier and is posed for the first time.").

Within this legal framework, this Court will now evaluate the merits of Forever Green's request

for a third §303(i) award.

**B.      Merits of a Third Fee Award**

Consistent with its prior requests, Forever Green has, pursuant to the Motion, requested this Court

assess all of the Petitioning Creditors with Forever Green's fees and costs incurred since September 30,

2014.  In response, the Dawsons did not appear.  Cohen Seglias did appear and objected to its assessment

of a third award of attorneys' fees and costs.  In support of its Objection, Cohen Seglias makes two

arguments in favor of this Court's determination that Cohen Seglias should not be assessed with any

additional award.

First, Cohen Seglias challenges the reasonableness of certain of Forever Green's fees.  Cohen

Seglias argues that Forever Green's attorneys devoted an unreasonable amount of time to (1) collection efforts undertaken in relation to the Prior Fee Awards; (2) the defense of Cohen Seglias' offset defense in the State Court Action; and (3) Forever Green's prosecution of the §303(i) proceedings.

Second, and assuming this Court nonetheless decides that a fee award is warranted, Cohen Seglias also objects to its assessment of additional §303(i) liability.  Cohen Seglias relies upon its full payment of the Prior Awards to argue that imposing liability against Cohen Seglias would be inequitable.  In addition, Cohen Seglias argues that its involvement in the filing of the Involuntary Petition was exacerbated by the failure of its former counsel to adequately represent Cohen Seglias' interests.  Finally, Cohen Seglias argues that it should not be assessed with any of Forever Green's fees incurred in connection with the Third Circuit appeal due to its refusal to take part in that appeal.  These arguments do not challenge whether Forever Green is entitled to an award.  Rather, these arguments state reasons why this Court should assess only the Dawsons and not assess Cohen Seglias with additional liability.

To assist this Court's consideration, Forever Green and Cohen Seglias filed the Joint Stipulation.  Pursuant to the Joint Stipulation, the parties provided a breakdown of the fees and costs incurred by Forever Green during the period covered by the Motion.  As discussed, it identifies four categories of services: (1) the appellate proceedings; (2) the prosecution of the present request for a §303(i) award; (3) the offset proceedings; and (4) collection efforts.  In connection with all four categories of services, Forever Green employed a total of nine attorneys and one paralegal across two firms.  Attorneys from Maschmeyer Karalis P.C. included: (1) Aris J. Karalis, (2) Dustin G. Kreider, (3) Frank S. Marinas, and (4) Robert W. Seitzer.  In addition, Maschmeyer Karalis P.C. employed the services of one paralegal, Jill Hysley.  Forever Green also retained the services of Helmer, Conley & Kasselman, P.A.  Attorneys from Helmer, Conley & Kasselman, P.A. included: (1) Sean Conley, (2) Kelly M. Newman, (3) Aaron T. Penrod, (4) Judith A. Schneider, and (5) William H. Tobolsky.  In accordance with the parties' categorization of attorneys' services, this Court will frame its evaluation of whether a third fee award is warranted by reviewing the reasonableness of the fees and costs incurred in connection with each category of service.

16

**The Appellate Proceedings**

As disclosed by the Joint Stipulation, Forever Green's attorneys billed their client a total of $40,372.95 in connection with services relating to appellate proceedings. Of this amount, attorneys from Helmer, Conley & Kasselman, P.A. billed a total of $880.00 for their services. The remainder was billed by attorneys from Maschmeyer Karalis P.C. In determining whether Forever Green is entitled to reimbursement of its attorneys' fees and costs incurred in connection with the appellate proceedings, this Court recognizes that such fees and costs may be the basis of a §303(i) award. *In re Rosenberg*, 779 F.3d 1254, 1265 (11th Cir. 2015); *In re Law Center*, 304 B.R. 136, 138 (Bankr. M.D. Pa. 2003); *In re Atlas Mach. and Iron Works, Inc*., 190 B.R. 796, 803 (Bankr. E.D. Va. 1995). The same is true for other fee-shifting statutes. *See, e.g., Hamer v. County of Lake*, 871 F.2d 58, 60 (7th Cir. 1989) (holding that prevailing plaintiff in §1988 action was entitled to an award of fees incurred as a result of opponent's unsuccessful appeal). For this reason, this Court has determined that Forever Green is entitled to an award based upon its fees and costs incurred in the appellate proceedings. However, Cohen Seglias did not participate in the appeal of the District Court Memorandum to the Third Circuit. This Court will address the allocation of liability for this award below.

**§303(i) Proceedings**

As disclosed by the Joint Stipulation, Forever Green's attorneys billed their client a total of $19,332.00 in connection with services relating to the parties' §303(i) litigation. Of this amount, attorneys from Helmer, Conley & Kasselman, P.A. billed a total of $3,170.00 for their services. The remainder was billed by attorneys from Maschmeyer Karalis P.C. In response, Cohen Seglias argues that these fees are inappropriate because Forever Green failed to mitigate its damages and that Cohen Seglias should not be penalized for attempting to defend itself from the assessment of Forever Green's fees and costs.

It is well established that a former involuntary debtor is entitled to reimbursement of its fees incurred in connection with the litigation of a §303(i) motion. *In re Express Car & Truck Rental, Inc*., 440 B.R. 422, 436 (Bankr. E.D. Pa. 2010) ("The Former Debtors' entitlement to 'fees on fees' is well

established.").  While case law does observe that a former debtor should act with appropriate discretion

when requesting "fees on fees," *see, e.g., In re John Richards Homes Building Co., LLC*, 523 B.R. 83, 87

(Bankr. E.D. Mich. 2014), this Court finds no basis to infer that Forever Green's fees and costs incurred

in connection with its subsequent §303(i) requests somehow represent a failure to abide by a duty to

mitigate its damages.  In addition, this Court has found no support for the proposition that the Petitioning

Creditors should not be charged for fees incurred by Forever Green as a result of Cohen Seglias' good-

faith defense of a §303(i) request.[23]  As Cohen Seglias concedes, it was not the prevailing party in these

proceedings.

        While this Court does not credit Cohen Seglias' objections, this Court cannot confirm that

Forever Green established that the total amount of its fees was reasonable.  Forever Green's time records

indicate that five separate attorneys and one paralegal provided services in connection with the §303(i)

proceedings.[24]  The majority of this time was billed by an associate of Maschmeyer Karalis P.C.  From

this fact, this Court finds that the majority of the time incurred was reasonable.  *See, e.g., Fair Hous. Ctr.

of Sw. Michigan v. Hunt*, Civ. No. 09-593, 2013 WL 5719152,*15 (W.D. Mich. Oct. 21, 2013)

(acknowledging that the over-utilization of partners may render fees unreasonable).  However, this Court

finds that it was inappropriate for Forever Green to be represented by multiple attorneys at the November

19, 2014 hearing.  As reflected by Forever Green's time records, two attorneys attended the November

19, 2014 hearing, Robert W. Seitzer and William H. Tobolsky.  Generally, courts do not permit the

recovery from an adversary fees incurred by multiple attorneys attending the same proceeding.

*Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995) ("the

attendance of additional counsel representing the same interests as the lawyers actually conducting the

deposition is wasteful and should not be included in a request for counsel fees from an adversary."); *In re

Channel Master Holdings, Inc.*, 309 B.R. 855, 863 (Bankr. D. Del. 2004) (disallowing compensation for

---

[23]  As discussed below, this Court does find that Cohen Seglias' arguments are relevant to the allocation of liability for the
present §303(i) award.

[24] Joint Stipulation, Exh. 1.

more than one attorney attending the same hearings).  Because Forever Green did not present any

evidence as to why Mr. Tobolsky's attendance was necessary to the defense of the involuntary petition,[25]

this Court finds that it is inappropriate to charge the Petitioning Creditors for his time.  Accordingly, this

Court will disallow $2,080.00 of Forever Green's fees incurred in connection with its prosecution of the

§303(i) proceedings.

In addition, this Court finds that an additional reduction is warranted.  Having found that Forever

Green is not entitled to the entirety of its present fee-shifting request, this Court finds it necessary to

reduce the amount of the compensable fees associated with Forever Green's prosecution of the §303(i)

proceedings.  *See, e.g., In re Beltway Law Group, LLP*, Bky. No. 14-00380, 2015 WL 44562717, *3

(Bankr. D.D.C. Jul. 20, 2015) (disallowing fees incurred in connection with the advancement of

unsuccessful arguments).  In total, this Court has determined that a total of $15,446.35 in fees and costs

unrelated to the §303(i) litigation are not compensable.[26]  This amount represents 17% of the total fee-

shifting request that is unrelated to the §303(i) litigation.  Because Forever Green is not entitled to

compensation for services incurred in connection with unsuccessful arguments, this Court will reduce the

amount of §303(i) litigation fees that it has otherwise found to be reasonable, $17,873.33, by 17% or

$3,024.88.  For these reasons, this Court finds that Forever Green is entitled to an award in the amount of

$14,848.45 with regard to those fees and costs incurred in connection with the §303(i) proceedings.

**The Offset Proceedings**

As disclosed by the Joint Stipulation, Forever Green's attorneys billed their client a total of

$17,226.50 in connection with services relating to the offset proceedings.  The entirety of this amount was

billed by attorneys from Maschmeyer Karalis P.C.  With regard to this category of services, Cohen

---

[25] Mr. Tobolsky appears to be Mr. Day's personal counsel and is apparently involved in representation Forever Green and Mr.
Day in their other, non-bankruptcy litigation.  *See, e.g., Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, Civ. No.
11-633, 2014 WL 3749192, at *2 (M.D. La. July 30, 2014) (describing Mr. Tobolsky as Mr. Day's and Forever Green's
"corporate counsel"); *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, Civ. No. 11-633, 2014 WL 29451, at *18
(M.D. La. Jan. 3, 2014) (describing Mr. Tobolsky as Mr. Day's and Forever Green's "corporate attorney"); *In re Forever Green
Athletic Fields, Inc.*, 500 B.R. 413, 419 (discussing Forever Green's malpractice claim against the Babcock law firm).

[26] As discussed below, this Court has determined that, $15,446.35, the entirety of Forever Green's fees and costs incurred in
connection with its collection efforts, may not form the basis of an additional §303(i) award.

19

Seglias makes two arguments.  First, Cohen Seglias argues that, for a portion of the relevant fees, Forever Green has not established their reasonableness.  Specifically, Cohen Seglias objects to a total of $1,559.00 as being unreasonable because they are duplicative.  Cohen Seglias objects that another $361.50 in fees are not reasonable because they seek compensation for in-firm meetings among attorneys.  With regard to the remainder of Forever Green's fees and costs, Cohen Seglias does not challenge their reasonableness. Instead, Cohen Seglias argues that the reimbursement of these fees and costs is not warranted because it should not be penalized for asserting a good faith defense to its obligation to pay the Prior Awards.

With regard to the duplicative fees, Cohen Seglias cites two time entries: (1) a time entry dated December 23, 2014, accounting for 1.6 hours of time incurred by Robert W. Seitzer described as "Research re: setoff 303(i) damages;" and (2) a time entry dated December 24, 2014, accounting for 1.6 hours of time incurred by Robert W. Seitzer described as "Research re: setoff 303(i) damages."  For whatever reason, Cohen Seglias did not present any evidence at the Hearing to establish that these time entries are in fact duplicative or otherwise entered in error.  While it is curious whether Mr. Seitzer did perform the same exact service for the same amount of time on consecutive days, it is altogether possible that he did spend a total of 3.2 hours researching this issue.  In isolation, both entries appear reasonable. This Court is unwilling to conclude by that the mere repetition of identical time entries indicates that the underlying services were not in fact performed or were not otherwise reasonable.

Next, Cohen Seglias cites to three time entries: (1) a time entry dated December 22, 2014, accounting for .3 hours of time incurred by Robert W. Seitzer described as "Conference with AJK re: Cohen Seglias state court action;" (2) a time entry dated December 23, 2014, accounting for .4 hours of time incurred by Robert W. Seitzer described as "Telephone conference with AJK and client re: removing state court action;" and (3) a time entry dated January 7, 2015, accounting for .3 hours of time incurred by Frank S. Marinas described as "Meeting with RWS re: 11 USC §303(i) setoff and failure to revise defenses."  With regard to these entries, the record does not indicate that these entries are duplicative or are otherwise unreasonable.  The time records do not contain corresponding time entries of the other attorneys who participated in these meetings.  As a result, this Court cannot infer that these services are

duplicative or otherwise unreasonable. *See, e.g., In re Channel Master Holdings, Inc.*, 309 B.R. 855, 863 (Bankr. D. Del. 2004) (finding that time entries for inter-office conferences were not duplicative when billed only by the junior attorney in attendance).

Without a basis to infer Forever Green's fees and costs were unreasonable, this Court has determined that Forever Green is entitled to a §303(i) award of the entirety its fees and costs incurred in the offset proceedings.  In making this determination, this Court does credit Cohen Seglias' arguments regarding whether it should be penalized for mounting a good faith argument in defense of its potential liability.  However, this Court finds that those arguments are not relevant to whether Forever Green is entitled to a §303(i) award.  This is particularly significant given that, as previously discussed by the Court at the hearing on the removal of the Offset Proceeding, the majority of bankruptcy courts addressing the issue of the right of offset by the liable petitioning creditor have found that no such rights exist.  Further, Cohen Seglias' decision to assert such a right in a state court proceeding as opposed to the Bankruptcy Court where the award had been entered, appears to have been  blatant forum shopping.

**Forever Green's Collection Efforts**

As disclosed by the Joint Stipulation, Forever Green's attorneys billed their client a total of $15,332.00 in connection with their collection efforts undertaken in relation to the Prior Fee Awards.  All services were performed during the period beginning December 5, 2014 and ending July 31, 2015.  Of this amount, attorneys from Helmer, Conley & Kasselman, P.A. billed a total of $14,746.00 for their services.  The remainder, a total of $586.00, was billed by one attorney, Robert W. Seitzer, from Maschmeyer Karalis P.C.  Unsurprisingly, Cohen Seglias objects to the reasonableness of these fees.  In essence, Cohen Seglias argues that the attorneys from Helmer, Conley & Kasselman, P.A. failed to exercise billing judgment with regard to the services performed in furtherance of the collection of the Prior Awards.

Before addressing the reasonableness of the fees incurred by Forever Green in connection with its attorneys, this Court must address whether attorneys' fees and costs incurred in connection with the collection of a prior §303(i) category of services may serve as the basis of a subsequent §303(i) award.

The collection services relate purely to Forever Green's attempts to cause the attachment of the

Petitioning Creditors assets.  Despite the representations of counsel for Forever Green,[27] this Court was

unable to identify any case law that stands for the proposition that a debtor's attempts to enforce a §303(i)

award are *necessarily* compensable.  This Court was able to identify only one instance wherein a court

addressed whether a debtor is entitled to a §303(i) award compensating it for the costs it incurred in

enforcing a pre-existing §303(i) award.

      In *John Richard Homes*, the Sixth Circuit addressed what it referred to as "an acrimonious

eleven-year dispute that has been litigated, at various times, in seven different federal courts and two

different state court systems."  *In re John Richards Homes Building Co., L.L.C.*, 552 Fed. Appx. 401, 402

(6th Cir. 2013).  After the bankruptcy court dismissed the initial petition, the bankruptcy court held a

§303(i) hearing.  After hearing the parties' evidence, the bankruptcy court determined that the petition

had been filed in bad faith and entered a §303(i) consisting of $4,100,000 in compensatory damages,

$2,000,000 in punitive damages and $313,230.68 in attorneys' fees and costs.  *Id.* at 403.  In response to

the entry of this award, the petitioning creditor caused the liquidation of his assets and used the proceeds

to purchase a $2.8 million home in Florida for the express purpose of frustrating the collection of the

§303(i) award.  *Id.* at 404.  After the Sixth Circuit confirmed the bankruptcy court's dismissal of the

original involuntary petition, the debtor filed a second §303(i) request relating to fees and costs incurred

in connection with its attempts to enforce the original §303(i) award.  Ultimately, the bankruptcy court

did grant the debtor's request and issued a second §303(i) award consisting of $2,800,000 in punitive

damages and $1,854,192.73 in attorneys' fees and costs.  *Id.*  Appeals inevitably followed.

      In considering whether the text of §303(i) permitted the second award, the Sixth Circuit observed:

      The statute is ambiguous, however, with respect to the award of attorney's fees for post-
      dismissal expenses in collateral litigation.  This ambiguity arises because the statute is
      silent as to the issues of timing and location of awards of attorney's fees; §303(i) does not

---

[27] In support of its position that §303(i) permits the reimbursement of fees and costs incurred in furtherance of a prior §303(i) award, counsel for Forever Green cited to case law applying the fee-shifting provisions of 42 U.S.C.A. §§1983 & 1988.  *See, e.g.*, Objection of Putative Debtor dated December 5, 2013 [Docket No. 77], p.12-13.  Problematically, counsel for Forever Green failed to explain to this Court that the case law it relied upon did not address §303(i).

> expressly allow or prohibit a bankruptcy court from awarding fees beyond those directly
> incurred by the debtor in defending against the involuntary petition in bankruptcy court,
> such as fees incurred defending appeals and in collateral proceedings.

*Id*. at 406.

After reviewing the text of §303(i) and a variety of decisions interpreting it, the Sixth Circuit concluded "[c]onstruing §303(i) to authorize awards of post-dismissal fees is, therefore, the approach most faithful to legislative intent." *Id.* at 409.  The Sixth Circuit then went on to determine whether the range of compensable post-dismissal fees included, not just appeals, but also collateral proceedings relating to the enforcement of the §303(i) award.  To reach its conclusion that enforcement proceedings were compensable, the Sixth Circuit invoked the fee-shifting provisions of 42 U.S.C. §1988 and the case law that held that fees and costs incurred in subsequent enforcement proceedings were compensable.  In finding §1988 persuasive, the Sixth Circuit observed that when a petitioning creditor resists or obstructs the collection of a §303(i) award, the purposes of §303(i) would be undermined if compensation of related attorneys' fees and costs was not permitted.  *Id.* at 410-11.

Having considered the issue and in the absence of binding authority, this Court finds the Sixth Circuit's reasoning to be persuasive and adopts its conclusion that a former debtor may obtain a subsequent §303(i) award to reimburse it for fees and costs incurred in connection with the enforcement of a prior §303(i) award.  However, this Court believes that such an award should be limited to extreme cases that involve, as in the case of *John Richards Homes*, a petitioning creditor willfully obstructing the collection of a prior §303(i) award.  Because Forever Green presented no evidence that the Petitioning Creditors attempted to frustrate the collection of the Prior Awards, this Court finds that the circumstances of this proceeding warrant a different result.

Assuming that it is appropriate to rely upon case law addressing §1988 fee awards to conclude collection efforts may form the basis of a §303(i) award, this Court considers it necessary to incorporate the various limiting principles adopted by those courts in order to delineate between acceptable and unacceptable fee requests.  Like §303(i)(1)(B), §1988(b) permits a "prevailing party" to recover its "reasonable attorney's fee…" 42 U.S.C. §1988(b).  In the context of §1988 civil proceedings, it is well

established that a prevailing plaintiff's reasonable attorneys' fees must be the result of the exercise of

"billing judgment."[28]  Because §303(i)(1) awards are considered damages, *see, e.g., In re Meltzer*, 535

B.R. 803, 810 (Bankr. N.D. Ill. 2015) ("fees assessed under section 303(i)(1) are considered damages"),

the exercise of billing discretion is also necessitated by Forever Green's obligation to mitigate its

damages.  As explained by the Supreme Court,

> Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel
> for the prevailing party should make a good faith effort to exclude from a fee request
> hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private
> practice ethically is obligated to exclude such hours from his fee submission.  In the
> private sector, 'billing judgment' is an important component in fee setting.  It is no less
> important here.  Hours that are not properly billed to one's client also are not properly
> billed to one's adversary pursuant to statutory authority.
>
> …
>
> *A request for attorney's fees should not result in a second major litigation.  Ideally, of
> course, litigants will settle the amount of a fee.*  Where settlement is not possible, the fee
> applicant bears the burden of establishing entitlement to an award and documenting the
> appropriate hours expended and hourly rates.

*Hensley v. Echerhart*, 461 U.S. 424, 434-37 (1983) (emphasis added); *see also West Virginia University

Hospitals, Inc. v. Casey*, 898 F.2d 357, 365 (3d Cir. 1990) ("We also reminded counsel that members of

the bar are officers of the court and that they should demonstrate the same level of billing judgment and

sensitivity in fee shifting situations as they do with their own private clients.").

Unlike in *John Richard Homes*, Forever Green has presented no evidence that the Petitioning

Creditors attempted to obstruct the enforcement of the Prior Awards.  To the contrary, Cohen Seglias

unilaterally paid the entirety of the Prior Awards on March 9, 2015.  Forever Green has presented no

explanation for its attorneys' expenditure of significant resources to cause the attachment of Cohen

Seglias' bank account.  Moreover, Forever Green has presented no evidence establishing whether its

attorneys ever explored the possibility of settlement before expending resources in furtherance of the

---

[28] This Court notes that the concept of billing judgment is equally applicable to §330 proceedings. *See, e.g., In re Busy Beaver
Bldg. Center, Inc.*, 19 F.3d 833, 856 (3d Cir. 1994) ("the court should review a fee application to ensure the applicant exercises
the same "billing judgment" as do non-bankruptcy attorneys by, for example, writing off unproductive research time, duplicative
services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes
the cost as overhead in corresponding non-bankruptcy matters, or for which analogous non-bankruptcy clients typically decline to
pay.").

attachment of the Petitioning Creditors assets.  The Second Fee Award was entered by this Court on

November 19, 2014.  Within two weeks, Helmer, Conley & Kasselman, P.A. began to ramp up its

collection efforts.  By the beginning of 2015, no less than six attorneys had billed their client for services

relating to the enforcement of the Prior Awards.

      Admittedly, the offset proceedings remained ongoing.  However, as characterized by Forever

Green, its attorneys' collection efforts did not relate to the offset proceedings.  Rather, Forever Green

characterizes its attorneys' collection efforts as being in furtherance of causing the Prior Awards to attach

to the assets of the Petitioning Creditors.  The time records presented to this Court contain no reference to

its attorneys having any reason to suspect the Petitioning Creditors were attempting to hide their assets or

otherwise prevent this Court's judgments from attached to the Petitioning Creditors' assets.  Moreover,

the time records indicate that Forever Green's attorneys did not even attempt to contact Cohen Seglias

regarding a potential settlement of the Prior Awards until January 8, 2015.  In response, it appears Cohen

Seglias' attorneys were immediately amenable to an amicable resolution of the issue.  Despite the

possibility of an amicable resolution, Forever Green's attorneys continued their efforts to execute upon

the Petitioning Creditors' assets.  For example, Forever Green's attorneys expended at least 10.2 attorney

hours[29] between the dates of February 17, 2015 and March 3, 2015, relating purely to the preparation and

---

[29] To calculate this amount, this Court relied upon the following time entries: (1) 1.3 hours incurred on February 17, 2015
described as "Draft writ of execution;" (2) .2 hours incurred on February 17, 2015 described as "Send instructions to Sean
regarding preparation of Written Execution;" (3) .8 hours incurred on February 18, 2015 described as "Work on writ of
execution;" (4) .1 hours incurred on February 18, 2015 described as "E-mail to Sean with copies of the two 11/19 judgments;" (5)
.1 hours incurred on February 18, 2015 described as "Call from Sean Conley. Discuss addition of interest to amount due on
Writ;" (6) .2 hours incurred on February 18, 2015 described as "Review Writ of Execution and ancillary papers as prepared by
Sean Conley. Forward to clients. Forward to department attorneys to find someone to shepherd the paperwork to the clerks and
marshals offices;" (7) .2 hours incurred on February 18, 2015 described as "Reviewed email and conference with W. Tobolsky,
regarding lien and levy attachment in PA;" (8) .2 hours incurred on February 19, 2015 described as "Review of Cohen Seglias
Writ of Execution package;" (9) 2.5 hours incurred on February 20, 2015 described as "Prepared federal service documents for
levy on PNC Bank including Form 285; correspondence to U.S. Marshall Service regarding service of levy and attachment;
telephone conference with Clerk US District Court, Eastern District PA and to U.S. Marshall Clerk regarding certified copy of
judgment; reviewed Judgments and Writ of Execution for filing; conferences with W. Tobolsky, Esq. and Aaron P., Esq.
regarding status and hearing and future strategy;" (10) .1 hours incurred on February 20, 2015 described as "Discussion with Judi
Schneider. She spoke to woman at Marshal's office in Phila. and has prepared all paperwork to go out Monday;" (11) .6 hours
incurred on February 23, 2015 described as "Follow up on letter to US Marshall and bank levy and review of case; review of
email regarding cancelation of hearing and reschedule for March 10;" (12) .2 hours incurred on February 23, 2015 described as
"Review and sign Writ of Execution documents;" (13) .2 hours incurred on February 26, 2015 described as "Reviewed email
from K. Day regarding status of levy to WHT and replied to same;" (14) 1.8 hours incurred on February 27, 2015 described as
"Telephone conferences with US Marshall Office and Ms. Gohn and supervisor x3; telephone conference with Clerk, ED PA
regarding status of levy and attachment; reviewed correspondence from client and drafted email regarding status; telephone

filing of a writ of execution ostensibly necessary for Forever Green to levy upon Cohen Seglias' bank account. Once the parties reached settlement, Forever Green's attorneys were then forced to expend an additional 5.8 hours[30] undoing their efforts to cause the attachment of the Prior Awards to Cohen Seglias' bank account.

As evidenced by Forever Green's time records and the ultimate payment of the full amount of the Prior Awards by Cohen Seglias, settlement of the §303(i) fee award, and specifically the collection of the Prior Awards, was not only possible it in fact occurred. The failure of Forever Green's attorneys to limit their efforts to the pursuit of a settlement is exacerbated by the nature of their conduct. As an initial matter, this Court notes that the collection efforts did not represent a continuation of the attorneys' prior representation. As evidenced by the time records of Helmer, Conley & Kasselman, P.A., this firm was specifically retained on or about December 5, 2014, more than a year after the dismissal of the

---

conference with Bankruptcy Clerk regarding registering Judgment for use in Civil District Court and issuance of Writ of Execution; telephone conferences with Jane Firestone US District Clerk and Intake Clerk Mr. Tomas; reviewed correspondence from Keith Day;" (15) .6 hours incurred on March 2, 2015 described as "Telephone conferences with Jane Griffith, Intake Bankruptcy Court; Jane Firestone Dsicrict [sic] Court; and Virginia Case Manager in Bankruptcy Matter regarding status of Writ of Execution and certified Judgments in support of levy and attachment of PNC bank account of Cohen Seglias;" (16) .9 hours incurred on March 3, 2015 described as "Telephone conference with Maria Kalinoski, regarding issuance of Writ of Execution by Bankruptcy Court and service on Marshall and status and drafted email regarding status; conferences with Marie regarding filing of Writ and certified copies; arranged for courier and check for clerk for certified copies and to pick up Writ package and deliver to Marshall;" (17) .2 hours incurred on March 3, 2015 described as "Review e-mails and filings from Bankruptcy Court. Writ of Execution has been issued by the Court. We are arranging for delivery to the US Marshall's office for levy."

[30] To calculate this amount, this Court relied upon the following time entries: (1) .1 hours incurred on March 5, 2015 described as "E-mail Judi Schneider, Esq. regarding interrupting process of service of Writ once we receive check tomorrow;" (2) 1.2 hours incurred on March 5, 2015 described as "Reviewed correspondence from WHT regarding status of Writ and stay of execution against PNC Bank Account of Cohen and legal research PA Code regarding Stay of Execution pursuant to Rule 3121(a)(1) and telephone conference to Marshall Office (closed due to snow storm) and drafted email to WHT regarding procedures under Rule and drafted letter to US Marshall Deputy Patrick Ennis regarding same;" (3) .4 hours incurred on March 6, 2015 described as "Read LiPuma e-mail and letter. Speak to LiPuma regarding clarify language. Send him e-mail and sends back an e0mall "Agreed". Review and sign letter to US Marshall requesting a stay of Writ of Execution;" (4) .9 hours incurred on March 6, 2015 described as "Telephone conferences with US Marshall's Office x3 regarding staty [sic] of execution and conference with WHT regarding same and reviewed email rom client regarding same and conference with Ms. Gohn to identify Deputy for service and to regarding letter to Stay Execution, revised and sent out same; telephone conference with Marie Calinosky regarding same;" (5) .5 hours incurred on March 25, 2015 described as "Revise Warrant to Satisfy, send to Seitzer and clients for review;" (6) .2 hours incurred on March 26, 2015 described as "Review of & revise Warrant to Satisfy Cohen Seglias Judgment;" (7) .9 hours incurred on March 26, 2015 described as "Prepared Limited Warrant to Satisfy Judgment and correspondence regarding same and reviewed email from Seitzer regarding same and email to WHT regarding filing of same;" (8) .2 hours incurred on March 26, 2015 described as "Review clerical corrections to warrant to satisfy, finalize and sent to clients;" (9) .7 hours incurred on March 27, 2015 described as "Electronic filing of warrant to satisfy judgment. Changes made to the document;" (10) .2 hours incurred on March 27, 2015 described as "Refile warrant;" and (11) .1 hours incurred on March 27, 2015 described as "Finalize Warrant to Satisfy and sent to Aaron to e-file."

involuntary petition, for the purpose of collecting the Prior Awards.[31]  Immediately thereafter, Helmer,

Conley & Kasselman, P.A. proceeded to staff five different attorneys to the task of collecting the Prior

Awards.  The collection of a judgment is not a complex task and the record contains no evidence that

Cohen Seglias, or the Petitioning Creditors generally, engaged in any behavior that would have suggested

that the immediate enforcement of the Prior Awards was warranted.  As a result, this Court must conclude

that this level of staffing exceeds any normal sense of billing judgment.

 The lack of billing judgment evinced by Forever Green's attorneys is further established by

reference to their time records.  In a description of a call between himself and Robert W. Seitzer that

occurred on March 4, 2015, William H. Tobolsky states: "Fees should be collected.  Cohen has no where

[sic] to go, Order is unappealable [sic] at this point.  *More and more fees to be added for collection*."

Joint Stipulation, Exhibit 3, p.6 (emphasis added).  From this description, this Court must conclude that

the attorneys from Helmer, Conley & Kasselman, P.A. viewed their retention as being funded by a blank

check.  In this context, this Court cannot help but conclude that their decision to staff five attorneys on the

task of collecting a $124,281.91 judgment evidenced a lack of good faith effort to exclude excessive fees

from their §303(i) request.  Because Forever Green's attorneys apparently viewed the entire task of

collecting the Prior Awards as a means to pad a future §303(i) award, this Court believes that a line by

line review of the attorneys' time records is not necessary.  Without any reason to suspect that the

Petitioning Creditors would refuse to pay or otherwise frustrate the collection of the Prior Awards, the

litigiousness of Forever Green's lawyers cannot be considered reasonable.

 This Court acknowledges that, in some extreme circumstances, the expenditure of additional fees

relating to the collection of a prior §303(i) award may merit the imposition of a subsequent §303(i) award.

Because Forever Green failed to present any evidence that the Petitioning Creditors and specifically

Cohen Seglias engaged in any behavior that would frustrate the enforcement of the Prior Fee Awards, this

Court finds that Forever Green failed to meet its initial burden of establishing the reasonableness of its

---

[31] Joint Stipulation, Exhibit 3, p.1.

fees incurred in connection with the collection of the Prior Fee Awards. Moreover, the evidence that was presented suggests to this Court that the failure to exercise billing judgment was driven by the mistaken belief that whatever fees, regardless of amount, Forever Green's attorneys did generate would be ultimately charged to the Petitioning Creditors and specifically Cohen Seglias. As recognized by the Supreme Court, fee-shifting statutes should not be read to encourage this type of behavior. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). For these reasons, this Court will deny Forever Green's §303(i) request with regard to the entirety of the $15,332.00 in fees and $114.35 in costs incurred in connection with Forever Green's collection efforts.

**Allocation of Liability for §303(i) Award**

In exercising its discretion, this Court may also consider how the liability for a §303(i) award should be allocated among Petitioning Creditors. *In re Maple-Whitworth*, 556 F.3d 742, 746 (9th Cir. 2009) ("a bankruptcy court has discretion to hold all or some petitioners jointly or severally liable for costs and fees, to apportion liability according to petitioners' relative responsibility or culpability, or to deny an award against some or all petitioners, depending on the totality of the circumstances."). In connection with the Prior Fee Awards, this Court held each of the Petitioning Creditors jointly and severally liable. However, this Court has determined that the circumstances of Forever Green's third §303(i) request warrants a departure from this Court's prior allocation of liability. Since the imposition of the Prior Awards, Cohen Seglias has paid the entirety of the Petitioning Creditors' liability. In addition, Cohen Seglias did not participate in the appellate proceedings and therefore should not bear any liability for those fees and costs incurred by Forever Green. Despite being primarily responsible for the improper filing of the Involuntary Petition and the subsequent appeal of this Court's Dismissal Order, Mr. Dawson has escaped bearing any responsibility for his conduct.[32] While Cohen Seglias should have devoted more attention to the matters implicated by the filing of the Involuntary Petition, its payment of the Prior Fee

---

[32] As this Court previously determined, "the Involuntary Petition was used by Mr. Dawson as a litigation tactic to further his personal financial interests thereby rebutting the presumption that Mr. Dawson acted in good faith." *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 428 (Bankr. E.D. Pa. 2013).

Awards is sufficient to ensure that it and other similarly situated creditors are reminded to exercise

reasonable diligence when filing an involuntary petition. [33]  *See, e.g., In re ELRS Loss Mitigation, LLC*,

325 B.R. 604, 637 (Bankr. N.D. Okla. 2005).  By paying the entirety of the Prior Fee Awards, Cohen

Seglias has enabled Mr. Dawson to avoid bearing any responsibility for his improper conduct.  Mr.

Dawson was the party primarily culpable for the filing of the Involuntary Petition.  To prevent Mr.

Dawson from avoiding any financial responsibility for his misconduct, this Court will require Mr.

Dawson to bear exclusive liability for the entirety of Forever Green's third §303(i) award.

## CONCLUSION

For the reasons stated, this Court will exercise its discretion and enter a judgment in favor of

Forever Green and against Charles C. Dawson, only, in the total amount of $72,585.60. [34]


Dated:  May 3, 2017

_Magdeline D. Coleman_
_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE


Aris J. Karalis, Esquire
Robert W. Seitzer, Esquire
Maschmeyer Karalis P.C.
1900 Spruce Street
Philadelphia, PA 19103

Steven K. Eisenberg, Esquire
Stern & Eisenberg, PC
The Pavilion
261 Old York Road, Suite 410
Jenkintown, PA 19046

Leslie J. Rase, Esquire
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, PA 18976

---

[33] The Court's allocation of liability is based upon the record establishing that Cohen Seglias paid the Prior Fee Awards in full. To the extent that Cohen Seglias has recovered the monies it paid for the Prior Fee Awards from any source, including any claims against its prior attorney or Dawson, the Court will reconsider the allocation of liability for the third §303(i) award.

[34] This amount includes: (1) $40,372.95 incurred in connection with the appellate proceedings; (2) $17,364.20 incurred in connection with the offset proceedings; and (3) $14,848.45 incurred in connection with the prosecution of the instant Motion.

Robert H. Holber, Esquire
Robert H. Holber PC
41 East Front Street
Media, PA 19063

United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107